**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| ANTONIO JOSE LOPEZ PEREZ, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CASE NO.:  7:26-CV-00029-WLS-ALS |
| | : | |
| DAVID PAULK, *et al.* | : | |
| | : | |
| Respondents. | : | |
| | : | |

## ORDER

Before the Court is Petitioner's Motion to Enforce Order Granting Habeas Petition ("Motion") (Doc. 7), filed on March 9, 2026. Therein, Petitioner moves the Court to enforce its previous Order (Doc. 3) which granted Petitioner's Habeas Petition (Doc. 1) to the extent the Court ordered Respondents to provide Petitioner with a bond hearing. Petitioner contends that Respondents violated the Court's Order by failing to provide Petitioner with a constitutionally valid bond hearing. (Doc. 7). For the reasons discussed below, the Motion is **GRANTED**.

### I.   **PROCEDURAL BACKGROUND**

Petitioner filed a Petition for Writ of Habeas Corpus (Doc. 1) under 28 U.S.C. § 2241 on February 3, 2026, challenging the constitutionality of his detention based on Respondents' failure to provide him with a bond hearing and the opportunity for pre-removal release. On February 5, 2026, the Court granted Petitioner's Petition, finding that Petitioner was detained under 8 U.S.C. § 1226(a) and therefore not subject to mandatory detention under § 1225. (Doc. 3). The Court ordered Respondents to provide Petitioner with a bond hearing to determine if he may be released on bond under § 1226(a)(2) and the applicable regulations. (*Id.*)

On March 9, 2026, Petitioner filed the instant Motion, seeking enforcement of the Court's prior Order (Doc. 7). Petitioner then moved for an expedited briefing schedule (Doc. 9), which the Court Granted. (Doc. 10). In compliance with the expedited briefing

1

schedule, Respondent timely responded (Doc. 12) and Petitioner timely replied. (Doc. 13). Thus, the Parties having submitted their briefs, the Motion is fully briefed and ripe for ruling.

## II.    FACTUAL BACKGROUND

Petitioner is an asylum-seeker who is a citizen of Venezuela. (Doc. 1 ¶¶ 17–23). He is a gay man who was persecuted by the Maduro regime for both his sexual orientation and political activities. (*Id.*) Around August of 2021, Mr. Lopez surrendered to Border Patrol officials upon entry to the United States. (*Id.* ¶ 19). Mr. Lopez alleges that his removal proceedings were never initiated because Immigration and Custom Enforcement (ICE) never filed his original Notice to Appear, despite issuing one to him upon his arrival. (*Id.* ¶ 20). Mr. Lopez began reporting to the ICE field office in Charlotte, North Carolina, and applied for asylum. (*Id.* ¶¶ 22–23). Mr. Lopez's mother and sister also live in North Carolina, where he is a resident. (*Id.* ¶¶ 17, 24). Mr. Lopez applied for and received employment authorization which is valid until June 2030. (*Id.* ¶ 25). On January 20, 2026, Mr. Lopez went to the ICE field office for an appointment. (*Id.* ¶ 26). There, ICE officers noticed Mr. Lopez had no immigration court dates pending. (*Id.*) Mr. Lopez confirmed this fact, informed the officials he had filed his asylum application, and the ICE officers detained him, and issued a new Notice to Appear, charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I). (*Id.*) ICE transported Mr. Lopez from Charlotte, North Carolina, to Irwin County, Georgia. (*Id.* ¶ 28).

After the Court granted Petitioner's habeas petition, the Executive Office of Immigration Review held a bond hearing on February 13, 2026, at the Stewart Immigration Court. (Doc. 7-3 at 4). Mr. Lopez's attorney filed a five-hundred-and-sixty-page evidentiary packet allegedly providing a robust record as to why Mr. Lopez is neither a flight risk nor a danger to the community. (*Id.*) At the hearing, Immigration Judge Brown ("IJ Brown") acknowledged receipt of the evidentiary filings but did not state she had reviewed them. (*Id.* at 5). Immediately after the Petitioner rested, IJ Brown denied bond, finding that Mr. Lopez did not meet his burden to show he is not a significant flight risk. (*Id.*) Petitioner's attorney speculates that IJ Brown made her decision and typed it before Petitioner began his argument because IJ Brown only typed on her computer during the Respondents' arguments. (*Id.*) The substance of IJ Brown's Order was the following two sentences: "Respondent has not met his

2

burden to show that he is not a significant flight risk. Respondent is a relatively recent entrant to the United States having entered unlawfully in 2021, he has tenuous ties to the United States, and his relief before the Court is speculative." (Doc. 7-9 at 2).

## III.   PRELIMINARY ISSUES

### A.  Habeas Corpus Legal Standard

"[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). 28 U.S.C. § 2241 confers upon district courts the power to grant writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." This power extends to challenges brought by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91 (2025).

### B.  Jurisdiction

Respondent argues that 8 U.S.C. § 1226(e) expressly precludes the Court from reviewing IJ Brown's bond decision. (Doc. 12 at 5). Indeed, "§ 1226(e) precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). However, this express preclusion is cabined in the immediate next sentence in *Jennings*, "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'" *Id.* (quoting *Demore*, 538 U.S. at 517). Indeed, where detainees challenged "the constitutionality of the entire statutory scheme under the Fifth Amendment," § 1226(e) did not preclude their claims. *Id.* Accordingly, Petitioner challenges "the IJ's conduct" at the bond hearing, alleging it violated "his due process rights and this Court's order." (Docs. 13 at 3–4 & 7-3 at 8). And "[§] 1226(e) contains no explicit provision barring habeas review." *Demore*, 538 U.S. at 517.

Several circuits courts have similarly found that § 1226(e) does not deprive the Court of jurisdiction to review a due process challenge like the one at issue here. *Soto-Medina v. Lynch*, No. 1:25-CV-1704, --- F. Supp. 3d ----, 2026 WL 161002, at *3 (W.D. Mich. Jan. 21, 2026). *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) ("To the extent the government is arguing that section 1226(e) deprives the district court or this court of jurisdiction, that claim fails: [petitioner] does not challenge the IJ's ultimate exercise of discretion, but rather 'the

3

extent of the Government's detention authority under the statutory framework as a whole.'") (citation modified); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Whether [petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *distinguished on other grounds by Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law."); *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022) (concluding that "§ 1226(e) does not bar our review"); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) ("Because [petitioner] does not challenge a particular action or decision, but rather 'the statutory framework that permits his detention without bail,' § 1226(e) does not deprive the District Court or this Court of jurisdiction over [petitioner's] petition." (citation modified).

As a final note on the jurisdictional issue, "[c]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). The Court ordered Respondents to "provide Petitioner with a bond hearing . . . under § 1226(a)(2) and the applicable regulations." (Doc. 3). In so ordering, the Court expected Respondent would hold a bond hearing that comports with due process. Because Petitioner alleges that Respondent did not, the Court has jurisdiction to review these allegations and, if needed, enforce its Order.

## C. Exhaustion of Administrative Remedies

As an initial matter, "[t]he doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law . . . [and] provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States*, 395 U.S. 185, 193 (1969) (citations omitted). Exhaustion serves two main purposes: first, it "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures[,]" and second, it "promotes efficiency [because] [c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citation modified). Congress may codify the doctrine as a jurisdictional bar, and

4

"[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress had not clearly required exhaustion, sound judicial discretion governs." *Id.*

Respondents argue that Petitioner's Motion should be denied because Petitioner has not exhausted his administrative remedies: an appeal to the Board of Immigration Appeals (BIA). (Doc. 12 at 9). Respondents point to the general rule that a petitioner must exhaust all administrative remedies before the *initial* filing of a § 2241 petition in federal court. (*Id.* at 10 (citing *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015))). While this is true, exhaustion in this context is not a jurisdictional requirement, but rather a "judge-made" prerequisite. *Id.* at 474–75. Respondents concede this point but contend, without citation to a statute or regulation, that Petitioner must still appeal to the BIA because he has "deprived the agency of the opportunity to review his claim under the administrative bond scheme set forth by Congress and the applicable regulations." (Doc. 12 at 10). But Petitioner is not seeking to file a § 2241 petition, rather he is challenging the constitutionality of detention procedures under § 1226(a) following the Court's conditional writ of habeas corpus. Respondents do not point to any other provision of the immigration laws where Congress clearly required exhaustion in this context, and neither has the Court found one.[1] In the absence of an applicable statute or rule mandating administrative exhaustion by Petitioner, the Court has discretion to decide if exhaustion should be required. *See McCarthy*, 503 U.S. at 144. Under the circumstances presented in this case, the Court exercises its discretion to excuse administrative exhaustion for two reasons.

First, the central question presented by Petitioner's Motion is whether the Due Process Clause requires that the Government be required to prove, by clear and convincing evidence,

---

[1] Respondents cite cases from district courts in this circuit in which habeas petitions were dismissed for failure to exhaust administrative remedies. (Doc. 12 at 9) (citing *M.A.M.M. v. Warden, Irwin Cty. Det. Ctr.*, No. 7:21-cv-47-WLS-MSH, 2022 WL 452452, at *3 (M.D. Ga. Feb. 14, 2022), *recommendation adopted*, 2022 WL 794716 (M.D. Ga. Mar. 14, 2022); *Douglas v. Gonzalez*, No. 8:06-cv-890, 2006 WL 5159196, at *2 (M.D. Fla. June 12, 2006); *Sequeira-Blamaceda v. Reno*, 79 F. Supp. 2d 1378, 1381–82 (N.D. Ga. 2000)). But the cases Respondents cite are wholly distinguishable from the present case: each case involved an initial § 2241 petition and none of them involved a constitutional due process challenge. *See M.A.M.M.*, 2022 WL 452452, at *2 (Petitioner challenged his underlying state conviction and ongoing detention even though he was informed of, and refused, his right to review of his custody status); *Douglas*, 2006 WL 5159196, at *2 (Petitioner challenged the constitutionality of his mandatory detention under § 1226(c)); *Sequeira-Blamaceda*, 79 F. Supp. 2d at 1379 (Petitioner challenged his underlying state convictions).

that the noncitizen is a flight risk or a danger to the community to justify denial of bond. "That determination is principally a legal question of constitutional interpretation and does not require the record that would be developed if the Court required Petitioner to exhaust his administrative remedies." *Soto-Medina*, 2026 WL 161002, at \*3.

Second, an appeal to the BIA would be futile because the BIA does not have jurisdiction to adjudicate the constitutional issues raised in this case. *See In Re Rodriguez-Carrillo*, 22 I. & N. Dec. 1031, 1035 (BIA 1999) ("[N]either the Immigration Judge nor this Board may rule on the constitutionality of the statutes that we administer."). Even if the Court were to assume exhaustion is required in this case, the fact that the BIA cannot review the constitutional challenge raised in Petitioner's Motion places this case squarely within an exception to the exhaustion requirement. In *McCarthy*, the Supreme Court recognized three circumstances where "the interests of the individual weigh heavily against requiring administrative exhaustion." 503 U.S. at 146. One of those circumstances is present when "an administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief.'" *Id.* at 147 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973)). The Court provided as an example the exact situation here: "an agency . . . may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." *Id.*

Further, the Court notes that other district courts have similarly excused administrative exhaustion where a petitioner raises a due process challenge to the discretionary bond process under § 1226(a). *See Soto-Medina*, 2026 WL 161002, at \*4 (concluding exhaustion was not required because the petition raised a question of constitutional interpretation regarding the burden of proof in bond hearings, the BIA cannot review constitutional challenges, and BIA precedent placing the burden of proof on the noncitizen would likely require further judicial review); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237–38 (W.D.N.Y. 2019) (concluding that exhaustion was not required because delays inherent in a BIA appeal would result in petitioner's prolonged detention without due process and because petitioner's motion to enforce raised constitutional questions which the BIA has no jurisdiction to decide); *Alvarado Lopez v. Dillman*, No. 1:25-CV-2456, 2026 WL 688958, at \*4–5 (E.D. Va. Mar. 11, 2026)

(concluding that exhaustion was not required for a petitioner asserting a Fifth Amendment challenge to the procedures used during a § 1226(a) bond hearing); *see also Mathon v. Searls*, 623 F. Supp. 3d 203, 213 (W.D.N.Y. 2022) ("To the extent that [petitioner's] motion [to enforce] focuses on whether Respondent complied with the bond order, exhaustion of administrative remedies is not a precondition to this Court's review.").

In sum, because Respondents have not raised a statutory exhaustion requirement, and, in the alternative, because an exception to the exhaustion requirement applies, the Court rejects Respondents' argument that Petitioner's failure to seek review of the IJ's decision by the BIA precludes this Court from considering his motion to enforce the conditional writ.

## IV.   **DISCUSSION**

### A. Due Process

Respondents argue due process does not apply to Mr. Lopez because he was detained at the border. (Doc. 12 at 11). To support this argument, they cite to Judge Hugh Lawson's opinion in *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1339 (M.D. Ga. 2020). In that opinion, Judge Lawson noted the distinction[2] between an alien who has effected entry and one who has never entered and noted that "an alien detained at the border has only those rights regarding admission that Congress has provided by statute." *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020)) (citation modified). The Court benefits greatly from the insight of its late colleague Judge Lawson. However, *J.G.* was written before the Supreme Court stated that due process applies to *all* aliens in removal proceedings. "[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025). Indeed, "no person shall be removed from the United States without opportunity, at some time, to be heard." *Id.* (quoting *The Japanese Immigrant Case*, 189 U.S. 86, 101 (1903)). As a result, the Court must analyze whether the bond proceeding comported with due process.

Petitioner alleges two key deficiencies with the bond hearing: the bond hearing was not individualized, and the burden of proof was misplaced onto him. The Court will address each in turn. "[D]ue process requires that the nature and duration of commitment bear some

---

[2] The Court does not address, but acknowledges, Mr. Lopez, as an asylum seeker, may count as an alien who has effected entry. However, since the distinction does not matter for the purposes of the instant due process review, the Court does not reach the question.

reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The purpose of the individual's commitment in the immigration context varies immigrant to immigrant. Some are committed for immediate deportation on the basis of noncompliance with immigration laws or criminality. Some, as in Mr. Lopez's case, are committed simply pending the resolution of their removal proceedings, the outcome of which is not yet determined. (Doc. 14). The due process requirement that the nature and duration of confinement bear some reasonable relation to the purpose of the individual's commitment necessarily means the bond decision must be individualized.

Mr. Lopez plausibly alleges his bond hearing was not individualized. IJ Brown's decision comprised two sentences: "Respondent has not met his burden to show that he is not a significant flight risk. Respondent is a relatively recent entrant to the United States having entered unlawfully in 2021, he has tenuous ties to the United States, and his relief before the Court is speculative." (Doc. 7-9 at 2). As discussed above, the Court lacks jurisdiction to review IJ Brown's discretion. But it will review the nature and structure of the opinion for the minimal indicia of due process. To that end, the Court is persuaded the opinion was not individualized. The only discussion of Mr. Lopez's individual circumstances is his year of entry, 2021, and "tenuous ties." The opinion neither weighs nor acknowledges the relevance of the presence of Mr. Lopez's mother and sister in the town in which he lives. (Doc. 1 ¶ 24). Nor does it include any fact gleaned by the five-hundred-and-sixty-page evidentiary packet Mr. Lopez filed with IJ Brown. (Doc. 7-3 at 4). Nor did IJ Brown indicate at the hearing she had read the packet. (Doc. 7-4 ¶ 8). And IJ Brown announced her decision immediately at the end of the hearing. (Doc. 7-3 at 5). Taken together, these facts indicate an absence of the individualization required by due process.

### B. Burden of Proof

Petitioner argues the Court should order a new bond hearing with additional procedural safeguards, specifically that "DHS shall bear the burden of establishing clear and convincing evidence that Petitioner poses a danger or flight risk." (Doc. 7-3 at 19). This request shifts the standard burden of proof for hearings before IJs. Typically, "in a bond hearing before the IJ, the burden is on the non-citizen to establish to the satisfaction of the IJ that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor

8

bail risk.'" (Doc. 12 at 1-2) (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Indeed, IJ Brown ruled that Lopez "has not met his burden to show that he is not a significant flight risk." (Doc. 7-9 at 2).

However, "[§] 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). The burden of proof used by IJs in bond hearings comes from the standard set forth in a separate statute, 8 C.F.R. § 236.1(c)(8), which the BIA ruled was reasonable to use in bond hearings as well. *In Re Guerra*, 24 I. & N. Dec. at 40. But this Court is not required to defer to the Board of Immigration Appeals' interpretation of a statute, because the BIA is an administrative agency. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). In fact, the Court "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority, as the [Administrative Procedure Act] requires." *Id.* Therefore, the Court must independently review the IJ bond proceedings and whether the burden of proof IJ Brown used comported with due process.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[D]ue process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)). The Supreme Court upheld application of the clear and convincing standard for civil commitment proceedings because "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id.* And the Court is unwilling to ignore Supreme Court precedent in the civil commitment context for immigration purposes because "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Additionally, "the Supreme Court regularly relies upon civil commitment cases to inform its due process analysis in immigration cases." *J.G. v. Warden, Irwin Cnty. Det.*

*Ctr.*, 501 F. Supp. 3d 1331, 1336 (M.D. Ga. 2020) (citing *Zadvydas*, 533 U.S. at 690; and *Demore*, 538 U.S. at 561).

Respondent argues the Court should follow the handful of courts which have placed the burden of proof on the alien, arguing such a scheme is favored under the *Mathews v. Eldridge* balancing test. (Doc. 12 at 14). The Court notes that only a handful of courts have placed the burden on the alien, while "the overwhelming majority of district courts" and the First, Second, and Ninth Circuits hold the Government must bear the burden of proof to justify a noncitizen's detention pending removal proceedings. *See Hernandez-Lara v. Immigr. & Customs Enf't, Acting Dir.*, No. 19-cv-394-LM, 2019 WL 3340697, at *3 (D.N.H. July 25, 2019); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020); *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

## C. The *Mathews v. Eldridge* Test

In evaluating the proper remedy, the Court uses the factors from the *Mathews v. Eldridge* balancing test. 424 U.S. 319, 334 (1976). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). To identify "the specific dictates of due process" the Court must consider (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguard would entail." *Id.*

### 1. *Private Interest*

The first factor weighs in Petitioner's favor. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Even when detained to facilitate removal, the Supreme Court "repeatedly has recognized that civil commitment for *any* purpose constitutes a significant deprivation of liberty." *Addington*, 441 U.S. at 427 (emphasis added). The Government argues the private interest factor weighs against Mr. Lopez. (Doc. 12 at 14). But instead of describing Mr. Lopez's fundamental interest in liberty, the Government repeats its argument that due process does not apply to aliens. (*Id.*) The Government has either seriously misunderstood the *Mathews v. Eldridge* test or offered an

10

argument bordering on bad faith.[3] The private interest is necessarily the individual liberty interest by the person in confinement alleging a due process violation. "[I]mmigration detention is an extraordinary liberty deprivation that must be 'carefully limited.'" *J.G.* 501 F. Supp. 3d at 1336 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Petitioner has been in detention for about three months without a criminal conviction or final order of removal lodged against him. He has been compliant with immigration laws, visiting the Charlotte ICE field office regularly, applying for asylum, and applying for and obtaining employment authorization. (Doc. 1 ¶¶ 22–23, 25). Additionally, Petitioner's private interest extends to his ability to communicate with his immigration attorney and family to best prepare argument and evidence in this case. (Doc. 1 at 7).

*2. Risk of Erroneous Deprivation*

The second factor is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "[A]t this stage in the *Mathews* calculus, [the Court] consider[s] the interest of the erroneously detained individual." *J.G.*, 501 F. Supp. 3d at 1339 (quoting *Hamdi*, 542 U.S. at 530).

Respondents argue that the existing bond procedures mitigate a risk of erroneous deprivation by providing three levels of custody review: an initial determination by an immigration officer, a bond hearing before an IJ, and an appeal to the BIA. (Doc. 12 at 17). And that the procedures used at bond hearings allow IJs to consider a non-exhaustive list of factors and provide the non-citizen with the opportunity to present evidence. (*Id.*) Other courts that have addressed these arguments cite several reasons why existing procedures present a risk of erroneous deprivation.

First, the mere fact of detention means non-citizens are likely to have difficulty gathering evidence on their behalf. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 30 (1st Cir. 2021);

---

[3] In fact, the Government cites to *J.G.*, while ignoring that *J.G.* discredited nearly-identical arguments to the instant ones. *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1336 (M.D. Ga. 2020) ("The Government tries to downplay Petitioner's liberty interest. It urges the Court to ignore non-immigration, civil confinement cases, claiming that they are inapplicable in the immigration context. This argument belies the fact that the Supreme Court regularly relies upon civil commitment cases to inform its due process analysis in immigration cases.") ("[T]he Supreme Court is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.") (*Id.*) (citation modified).

*J.G.*, 501 F. Supp. 3d at 1337; *Soto-Medina*, 2026 WL 161002, at *8; *see also Moncrieffe v. Holder*, 569 U.S. 184, 201 (2013) (noting detained noncitizens "have little ability to collect evidence"). As Judge Lawson put it:

> Incarceration restricts the noncitizen's ability to communicate with attorneys, family members, or other individuals who may present testimony or have access to the noncitizen's records. Limited resources and investigative tools increase the likelihood that the factual record developed at the bond hearing will be incomplete. An incomplete record creates a considerable risk of error in the IJ's findings and impairs the BIA's ability to correct erroneous deprivations.

*J.G.*, 501 F. Supp. 3d at 1337. He went on to point out the imbalance of resources between a detainee and the Government, which has substantial resources yet isn't required to present "a shred of evidence." *Id.*; *see Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020) (noting that "the Government had substantial resources to deploy" and "to the extent the Government did not have the necessary information at its fingertips, it had broad regulatory authority to obtain it."). Second, proving a negative as to danger and risk of flight can be more difficult than proving a cause for concern. *See Soto-Medina*, 2026 WL 161002, at *8 (citing *Hernandez-Lara*, 10 F.4th at 31); *see also Elkins v. United States*, 364 U.S. 206, 218 (1960) ("[A]s a practical matter it is never easy to prove a negative."). Third, "noncitizens subject to immigration detention often lack full proficiency in English." *Hernandez-Lara*, 10 F.4th at 30. Finally, "those facing removal have no right to counsel 'and very often cannot obtain counsel on their own, particularly if they are detained.'" *Soto-Medina*, 2026 WL 161002, at *8 (citing *Hernandez-Lara*, 10 F.4th at 30).

Respondents also argue that non-citizens like Petitioner can seek bond redetermination from an IJ by showing changed circumstances. (Doc. 12 at 18). Judge Lawson addressed and ultimately rejected this argument in *J.G.*, concluding that the bond redetermination procedure doesn't provide a meaningful opportunity to correct an erroneous deprivation because:

> To receive a subsequent bond redetermination hearing, the noncitizen must first demonstrate that his "circumstances have changed materially." 8 C.F.R. § 1003.19(e); 8 C.F.R. § 236.1(d)(1). A showing of materially changed circumstances secures only a second bond hearing; it does not guarantee the noncitizen's release. The additional hurdle to prove materially changed circumstances makes relief more remote. And of course, not all erroneously deprived noncitizens will have access to this relief. Absent changed circumstances, a noncitizen will never receive a second bond hearing.

12

*J.G.*, 501 F. Supp. 3d at 1338. Judge Lawson noted that even if a petitioner receives a bond redetermination hearing based on changed circumstances, he encounters the same issues he faced at the first bond hearing, namely, the lack of resources to prove his case. *Id.* And if the petitioner is denied bond a second time, a BIA appeal may entail additional months of detention. *Id.* The Court agrees with Judge Lawson's conclusion that a bond redetermination hearing, to the extent that Petitioner may be entitled to one, is insufficient to reasonably and reliability provide the opportunity to correct an erroneous deprivation that meets the requirements of due process.

In sum, even though detention determinations are subject to multiple levels of review, the availability of review does little to change the risk of error inherent in the current bond procedure where the burden is always on the non-citizen. *See Hernandez-Lara*, 10 F.4th at 32. Further, the fact that current procedure allows an IJ to consider a "non-exhaustive list of factors," (Doc. 12 at 17), neither "ameliorate[s] the challenges an incarcerated non-citizen faces in gathering and presenting evidence[,]" *J.G.*, 501 F. Supp. 3d at 1338, nor "reduce[s] the risk of error caused by the regulations' burden allocation." *Hernandez-Lara*, 10 F.4th at 32. The risk of an erroneous deprivation under the current bond procedure is significant and is not abated by available administrative review. *See J.G.*, 501 F. Supp. 3d at 1337–38. "Where the risk of erroneous deprivation is high, and the deprivation the individual faces is severe, then modest, additional procedural safeguards carry high value." *Id.* at 1338–39. Thus, the second *Mathews* factor weighs in favor of Petitioner.

3. *Government Interest*

The third factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. This factor ultimately entails an assessment of the "public interest." *Hernandez-Lara*, 10 F.4th at 32. Respondents must point to "a special justification . . . [that] outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *J.G.*, 501 F. Supp. 3d at 1339 (quoting *Zadvydas*, 533 U.S. at 690). Respondents' proffered interests are the Government's interest in enacting and enforcing its immigration laws and the public interest in prompt execution of removal orders. (Doc. 12 at 19). Respondents also cite the Government's interest in detaining non-citizens during

13

removal proceedings, which is presumably its interest in ensuring non-citizens do not abscond and do not commit crimes. (*Id.* at 20). The importance of each of these interests is well-established. *See Nken v. Holder*, 556 U.S. 418, 436 (2009); *Velasco Lopez*, 978 F.3d at 854; *Hernandez-Lara*, 10 F.4th at 32. For example, "[t]he prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32 (citing *Nken*, 556 U.S. at 436 and *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 22 (1st Cir. 2007)). In considering that interest, the Court must "weigh heavily" the fact that "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). But in this case, like in *Hernandez-Lara*, what is at stake "is not the power of the government to detain noncitizens who may cause harm or flee during removal proceedings, but rather who should bear the burden of proving noncitizens pose a danger or a flight risk." 10 F.4th at 32.

As was the case in *Velasco Lopez* and *Hernandez-Lara*, Respondents here have not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. *Velasco Lopez*, 978 F.3d at 854; *Hernandez-Lara*, 10 F.4th at 32 ("The government fails to explain why its proffered interest in securing appearance at removal proceedings and for deportation holds sway where a noncitizen is not a flight risk."). It is true that "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings, but any detention incidental to removal must bear[ ] [a] reasonable relation to [its] purpose." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). Indeed, "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854–55; *see Soto-Medina*, 2026 WL 161002, at *9 ("[C]ommon sense suggests that it is in the Government's interest to limit the unnecessary detention of aliens deemed not to be a danger or flight risk.").

Further, the Supreme Court has instructed that "[i]n striking the appropriate due process balance the final factor to be assessed is the public interest. This includes the administrative burden and other societal costs that would be associated with" the additional process. *Mathews*, 424 U.S. at 347. The First and Second Circuits addressed the significant

14

societal costs associated with unnecessary detention, i.e., the detention of non-citizens who are not shown to be a danger or a flight risk. "[N]oncitizens subject to immigration detention include spouses, children, and parents of U.S. citizens, caretakers of children and elderly relatives, and leaders in religious, cultural, and social groups." *Hernandez-Lara*, 10 F.4th at 33. "When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time . . . it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees." *Velasco Lopez*, 978 F.3d at 855. "Those ruptures in the fabric of communal life impact society in intangible ways that are difficult to calculate in dollars and cents." *Hernandez-Lara*, 10 F.4th at 33. Respondents do not articulate a public interest served by unnecessary detention, and the Court sees none.

In sum, the Court is not convinced that placing the burden on the Government to prove by clear and convincing evidence that Petitioner is either a danger or a flight risk undermines its legitimate interests or entails undue administrative burden. As such, the third *Mathews* factor weighs in favor of Petitioner.

In sum, the Mathews factors establish that due process requires the Government to bear the burden of demonstrating that Petitioner is a flight risk or danger to the community to deny bond. *See Velasco Lopez*, 978 F.3d at 855 ("We believe that it is improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty. Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection."); *Soto-Medina*, 2026 WL 161002, at *10–11 ("Due process requires that, to deny bond, the government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community."; *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011) ("Given the substantial liberty interest at stake . . . we hold that the [G]overnment must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond [in the § 1226(c) context]."); *J.G.*, 501 F. Supp. 3d at 1342 ("The Court concludes that an intermediate standard, requiring clear and convincing evidence reflects the value society places on the individual liberty at stake in immigration bond hearings." (citation omitted)); *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 601 (W.D.N.Y. 2025) (finding that the balance of the Mathews factors supports placing the burden on the Government to prove by

15

clear and convincing evidence that a non-citizen is a flight risk or a danger to the community); *Abanil v. Baltazar*, No. 25-CV-4029, --- F.Supp.3d ----, 2026 WL 100587 (D. Colo. Jan. 14, 2026) (same).

## V.    CONCLUSION

In sum, the Court finds that Petitioner's bond hearing before IJ Brown did not comport with the minimal requirements of due process because it was not individualized and the burden of proof was incorrectly placed on Petitioner. Therefore, Petitioner's Motion is **GRANTED**. Respondents in this action are hereby **ORDERED** to provide Petitioner with a new, individualized bond hearing within seven days of the entry of this Order to determine if Petitioner may be released on bond under § 1226(a)(2) and the applicable regulations. In this new hearing, the Department of Homeland Security shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. Any bond decision made must be individualized, meaning after and reflective of the consideration of all evidence provided. If the Government fails to provide Petitioner with such a bond hearing within seven days of the entry of this Order, the Government is **ORDERED** to release Petitioner immediately.

**SO ORDERED**, this 6th day of April 2026.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

16